UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
JAV AUTO CENTER, INC., d/b/a MONROE
AUTOMOTIVE and JOHN VEST,

          05 Civ. 6503 (CS)(GAY)

Plaintiffs,

**ORDER ADOPTING REPORT
AND RECOMMENDATION**

- against -

WILLIAM A. BEHRENS and NEW YORK STATE
THRUWAY AUTHORITY,
          Defendants.
-----------------------------------------------------------------------x

Seibel, J.

Plaintiffs JAV Auto Center, Inc., d/b/a Monroe Automotive ("Monroe") and John Vest ("Vest"), a towing and auto repair business and its owner, brought this action in 2005 against Defendants New York State Thruway Authority (the "Authority") and William Behrens ("Behrens"), who was at all relevant times the Authority's Director of Traffic Management. The Complaint (Doc. 1) raised due process, First Amendment, equal protection, and statutory claims. In substance, Plaintiffs alleged that Defendants in 2003 cancelled Plaintiffs' contract to tow disabled trucks from the Thruway in retaliation for Plaintiff Vest's 1991 exposure of alleged corruption on the part of Authority employees. By Order dated December 14, 2005 (Doc. 17), Judge Brieant dismissed the due process and statutory claims. On the same date, he referred the matter to the Honorable George A. Yanthis, United States Magistrate Judge, for all purposes. (Doc. 21). On November 8, 2007, Defendants moved for summary judgment on the remaining two claims (Doc. 52), and on January 11, 2008, they supplemented that Motion with a motion to strike evidence (Doc. 98). In a Report and Recommendation ("R&R") dated June 19, 2008 (Doc. 101), Judge Yanthis recommended that the Motion for Summary Judgment be granted as to both

claims. Although Judge Yanthis did not explicitly rule on the Motion to Strike evidence in his R&R, he: 1) adopted Defendants' argument about one item of the disputed evidence and did not consider it in deciding the Motion (R&R at 10-11); and 2) considered the remainder of the disputed evidence but found it insufficient to meet Plaintiffs' burden (R&R at 7-8).

Plaintiffs have filed Objections to the R&R (Doc. 104), and Defendants have responded (Doc. 105). For the reasons stated below, I agree with Judge Yanthis' conclusions and hereby grant the Motion for Summary Judgment, although I reach my conclusion about the one item of the disputed evidence on slightly different reasoning, and rely, in connection with the equal protection claim, on the additional ground that the claim is no longer viable after a recent Supreme Court decision.

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Parties may raise objections to the magistrate judge's report and recommendation, but they must be "specific" and "written," and submitted "[w]ithin 10 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1)(C).

Where a party submits timely objections to a report and recommendation, as Plaintiffs have here, the district court reviews the parts of the report and recommendation to which the party objected under a *de novo* standard of review. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *see id.* ("The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."). The district court may adopt those portions of a report and recommendation to which no objections

have been made, as long as no clear error is apparent from the face of the record. *See White v. Fischer*, No. 04-CV-5358, 2008 WL 4210478, at *1 (S.D.N.Y. Sept. 12, 2008); *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985); Fed. R. Civ. P. 72 advisory committee note (b). The clearly-erroneous standard also applies when a party makes only "conclusory or general objections, or simply reiterates his original arguments." *Barratt v. Joie*, No. 96-CV-324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002).

Defendants argue that the clearly-erroneous standard should apply here because Plaintiffs' Objections simply restate their original arguments or are conclusory. (Defendants' Response to Plaintiffs' Objections to Report and Recommendation ("Defs.' Resp.") at 7-8.) While the argument has some force, I need not reach the issue, because in my view, the conclusions of the R&R are correct even under the *de novo* standard.

The Court will assume familiarity with the facts set forth in the R&R and in Judge Brieant's earlier opinion, and will set forth only an outline of the relevant facts. Plaintiff Vest supplied information to the Authority's Internal Audit Division in 1991 about alleged corruption on the part of Authority employees. Plaintiffs suggest that this information implicated Defendant Behrens as aware of another Authority employee's having taken a bribe or gratuity, but no disciplinary action was taken against Behrens. In 1998, Defendant Behrens recommended that Plaintiff Monroe be awarded a Letter of Authority ("LOA") to tow trucks on the Thruway. Consumer complaints about Monroe's billing practices and Authority audits of its invoices revealed irregularities based on which the Traffic Supervisor in the Authority's New York Division recommended cancellation of Monroe's license in 2002. Defendant Behrens ultimately recommended the same, and the Authority's Traffic and Safety Committee voted to terminate the

license in 2003. Plaintiffs allege that Monroe's billing practices were no different from those of other towing companies and that the real reason for the termination was Behrens' retaliation against Vest arising from Vest's provision of information about corruption in 1991.

Plaintiffs concede that Judge Yanthis articulated the appropriate standard for assessment of summary judgment motions. (Plaintiffs' Objections to Report and Recommendation of Magistrate Judge Yanthis ("Pls.' Objs.") at 3.) Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986). The moving party bears the burden of demonstrating the absence of any genuine dispute as to material facts, and the Court must view all facts in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 250 & n.4; *see id.* at 255 ("evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor"). The non-moving party cannot rely "merely on allegations or denials in its own pleading," but rather must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). It "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Material facts are those that might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Judge Yanthis recommended that summary judgment be granted on the First Amendment claim because Plaintiffs offered no facts suggesting a causal link between the protected speech in 1991 and the adverse action in 2003. To establish unconstitutional retaliation for the exercise of First Amendment rights, a public employee must prove: 1) that his speech addressed a matter of public concern; 2) that he suffered an adverse employment action; and 3) a causal connection between the speech and the action – in other words, that the speech was a motivating factor in the decision to take adverse action. *See Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138, 138-40 (2d Cir. 2008); *Mandell v. County of Suffolk*, 316 F.3d 368, 382 (2d Cir. 2003). This test has been applied to independent contractors of public entities. *See White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir. 1993) (applying test to towing company informally assigned by state police to tow on particular section of highway). A plaintiff can establish the causal link directly, or indirectly by either showing a close temporal proximity between the protected speech and the adverse action, or by showing that the plaintiff was treated unfairly when compared to similarly situated others who did not engage in protected speech. *See Clayton v. City of Middletown*, 564 F. Supp. 2d 105, 112 (D. Conn. 2008); *cf. Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (causal link in Title VII retaliation case). I concur with Judge Yanthis that Plaintiffs meet the first two prongs of the test but fail as to the third.

Plaintiffs attempted to establish the causal link directly and indirectly. First, they offered as direct evidence statements made by another garage owner, Kevin Cleary, to the effect that in 2007, Cleary had been told by Christopher Richards, an Assistant Traffic Supervisor employed by the Authority, that "they" – apparently a reference to the Authority in Albany, where Behrens

has his office – wanted to get Plaintiffs off the road. (Aff. of Stuart Blander filed Dec. 14, 2007, Ex. B ("Cleary Dep.") at 71-77.) Defendants moved to strike this statement, and Judge Yanthis disregarded it as inadmissible hearsay. *See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) (party cannot rely on inadmissible hearsay in opposing motion for summary judgment). Plaintiffs argue that Cleary's testimony was admissible as an agency admission under Fed. R. Evid. 801(d)(2)(D), which provides that a statement is "not hearsay" if it is offered against a party and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." A party seeking to admit a statement as a vicarious admission under this Rule must demonstrate: "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992). "The authority granted in the agency relationship . . . [is] the authority to take action about which the statements relate." *Id.* at 538. The declarant must be "an advisor or other significant participant in the decision-making process that is the subject matter of the statement." *United States v. Rioux*, 97 F.3d 648, 661 (2d Cir. 1996).

Judge Yanthis analyzed the statement as double hearsay – with the first level being the comment Richards made to Cleary, and the second level being the comment "they" made to Richards – and correctly noted that each level of the statement had to be admissible. *See* Fed. R. Evid. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these

rules.").[1] Defendant argues that both levels fall within the definition of agency admissions under Rule 801(d)(2)(D). Assuming that licensing of and billing by towing companies was within the scope of Richards' employment, and thus that the first level is in fact an agency admission, the offer falters because Plaintiffs cannot identify the "they" that spoke to Richards, and thus cannot establish that "they" had any role in the decision-making process regarding Plaintiffs' license. While Plaintiffs speculate that the declarant must have been Behrens, there are any number of Authority personnel in Albany who could have made the observation, whether or not their duties included supervision of towing companies. *See Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1002-03 (3d Cir. 1988) (employee-witness' testimony that "they" wanted a younger employee to replace plaintiff was inadmissible; plaintiff did not meet burden of establishing that unidentified declarant met requirements for vicarious admission, notwithstanding argument that declarant had to be employee-witness' supervisor because only employee-witness and supervisor were in decision-making chain). Because Plaintiffs cannot establish who the declarant is, and thus that the declarant was within the "decision-making hierarchy governing [Plaintiffs'] conduct," *Nyack v. S. Conn. State Univ.*, 424 F. Supp. 2d 370, 376 (D. Conn. 2006), the statement is inadmissible.[2]

---

[1] The Parties have likewise analyzed the statement as double hearsay. If in fact it is single hearsay, in that Richards was not reporting to Cleary statements of Authority employees in Albany, but rather was relaying in 2007 his own opinion of the Authority's conduct in 2003, it is of dubious relevance.

[2] *Pappas*, on which Plaintiffs rely (Pls.' Objs. at 13), is not to the contrary. There, the fact that the declarant showed up with a shovel and bucket at the icy walkway on which the plaintiff had fallen, after the icy condition had been reported to condominium management, was sufficient to establish that the declarant was an employee responsible for walkway maintenance. 963 F.3d at 538. Here we know nothing about the declarant except that he worked in Albany, which is insufficient to establish that he was in the chain of command responsible for the

Finally, and more fundamentally, even if the statement were admissible, it does not support the proposition that there is a causal link between Plaintiff Vest's protected speech and the termination of Monroe. To the contrary, if one keeps reading beyond the testimony that "they" wanted Plaintiffs off the road, Cleary testifies that Richards said that the reason "they" did not like Vest was because he was seeking payment beyond that to which his company was entitled. (Cleary Dep. at 74 ("If you charge for everything you do, okay. You give nothing to the motoring public and you want to get paid.").) Thus, the statement does not evidence intent to retaliate for speech, but rather is consistent with the stated reason for Plaintiffs' termination: overbilling. In short, the statement may establish animus toward Plaintiffs on the part of Authority officials, but it does not establish that the basis for that animus was Plaintiff Vest's exercise of his First Amendment rights.

Plaintiffs also attempt to establish the causal link indirectly. There being no close temporal proximity between the speech in 1991 and the termination of the license in 2003, Plaintiffs must show that they were treated unfairly compared to other, similarly-situated towing companies. Plaintiffs attempted to do so by providing copies of invoices and correspondence relating to other towing companies, along with Plaintiff Vest's handwritten annotations analyzing

---

licensing of towing companies. Likewise, *Davis v. Mobil Oil Exploration & Producing Southeast, Inc.*, 864 F.2d 1171, 1173-74 (5th Cir. 1989), on which Plaintiffs also rely (Pls.' Objs. at 13), likewise does not aid them. There the facts that three witnesses testified that the unidentified declarant was a Mobil employee, that he was wearing a Mobil hardhat, and that he issued the directive at issue during a project safety meeting, was sufficient to establish that he was a Mobil employee with authority over the project. *See id.* at 1174. Here we have no witness or other information describing the declarant's role or the circumstances under which he made the statement.

those documents.[3] Plaintiffs argued from these documents that Monroe was subject to more scrutiny and more discipline than other similarly-situated towing companies. I concur with Judge Yanthis that the documents (even with the annotations) do not establish the Monroe was treated differently or unfairly compared to other companies, and that Plaintiffs' showing is therefore simply insufficient to support their argument and their *prima facie* case. As to many of the billing discrepancies to which Plaintiffs point, there is no evidence that they ever came to the Authority's attention through consumer complaint or through audit. Those that did come to the Authority's attention were dissimilar; either they involved much less substantial overcharging, or they raised issues other than overcharging, or the documents are insufficient to determine what the circumstances were. Indeed, the chief defect in Plaintiffs' showing is the insufficiency of the documents (even coupled with Plaintiff Vest's hearsay analysis) to establish that the circumstances to which he points were similar to the circumstances of Monroe. For example, to the extent there was increased scrutiny of Monroe, as compared to other towing companies, that scrutiny followed consumer complaints, but without evidence as to the level of complaints those other companies received, Plaintiffs cannot establish that other companies with a similar level of complaints of similar seriousness were treated more favorably. Likewise, Plaintiffs offered no evidence beyond Plaintiff Vest's say-so that other garages were not disciplined for conduct similar to Monroe's; Plaintiffs simply have not provided evidence, by affidavit or sworn testimony or even documents sufficient to establish the circumstances, to show that the conduct of other garages were similar enough to Monroe's to support the claim of unequal treatment. A

---

[3] Defendants sought to strike these documents. In light of the disposition herein, that Motion is moot.

plaintiff "must aver some tangible proof demonstrating that [his] protected speech animated [the defendants'] decision [and] . . . may not rely on conclusory assertions of retaliatory motive." *Washington v. County of Rockland*, 373 F.3d 310, 321 (2d Cir. 2004) (internal quotation marks and citation omitted). Thus, Plaintiffs having failed to offer sufficient facts on the causation element, on which Plaintiffs bear the burden of proof, summary judgment for Defendants on the First Amendment claim is appropriate.

For similar reasons, Judge Yanthis recommended dismissal of Plaintiffs' equal protection claim. The claim was based on a "class of one" theory, where Plaintiffs do not allege that they were discriminated against based on membership in a protected class, but rather were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). A plaintiff advancing such a claim must show an "extremely high" degree of similarity. *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds by Appel*, 531 F.3d at 139-40. For the reasons stated above in connection with the First Amendment claim, Judge Yanthis found, and I agree, that Plaintiffs have not offered sufficient evidence to create an issue of fact as to similarity, and therefore summary judgment is appropriate.

Defendants also rely on the Supreme Court's recent decision in *Engquist v. Oregon Dep't of Agriculture*, 128 S. Ct. 2146 (2008). The *Engquist* Court found the "class of one" theory of equal protection violation inapplicable to public employees. The Court reasoned that a "class of one" theory was a "poor fit" in the public employment context, where "to treat employees differently is not to classify them in a way that raises equal protection concerns[, but r]ather . . . to simply exercise the broad discretion that typically characterizes the employer-employee

relationship." *Id.* at 2155. The Court noted that "[i]f, as [the plaintiff] suggests, plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim." *Id.* at 2156. It also held that "recognition of a class-of-one theory of equal protection in the public employment context – that is, a claim that the state treated an employee differently from others for a bad reason, or for no reason at all – is simply contrary to the concept of at-will employment." *Id.*

Defendants argue that the same principles apply here. (Defs.' Resp. at 14.) Plaintiffs point out that they were not employees of the Authority, but rather "operated under a license issued by the Thruway as independent contractors." (Pls.' Objs. at 9 n.3.) If Plaintiffs were independent contractors providing services to the Authority, *Engquist* would, in my view, plainly apply, because public agencies have the same need for flexibility and discretion in dealing with their contractors as they do with their employees. *See Douglas Asphalt Co. v. Qore, Inc.*, No. 07-CV-14849, 2008 WL 4022351, at *4 (11th Cir. Sept. 2, 2008) (applying *Engquist* to government contractor).

Here the relationship between Plaintiffs and the Authority is something of a hybrid. Plaintiffs' services were not provided to the Authority, but rather to the owners of the vehicles that needed to be towed from the Thruway. Plaintiffs were not employees of the Authority but were authorized to provide those services pursuant to a LOA, or license, issued by the Authority. The LOA was signed by Plaintiffs, making it akin to a contract, and it gave the Authority broad discretion to revoke the LOA without notice on terms much like those of employment at will:

"when, in [the Authority's] sole opinion, such an action would be in the best interest of the Authority and the driving public." (Aff. of Helen Garrison dated Oct. 16, 2007 ("Garrison Aff.") Ex. C at ¶ A.14.)[4] As the Court in *Engquist* noted, "there is a crucial difference, with respect to constitutional analysis, between the government exercising 'the power to regulate or license, as lawmaker,' and the government acting 'as proprietor, to manage its internal operation.'" *Engquist*, 128 S. Ct. at 2151 (quoting *Cafeteria & Rest. Workers v. McElroy*, 367 U.S. 886, 896 (1961)). The "class of one" theory remains applicable to the former role even after *Engquist*.

*Engquist* provided guidance on determining which role is implicated in a given case: "What seems to have been significant in *Olech* and the cases on which it relied was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed." *Id.* at 2153. Cases recognizing "class of one" claims involved seemingly irrational application of "arm's-length regulation." *Id.* at 2154-55. But when the governmental agency "exercis[es] discretionary authority based on subjective, individualized determinations," *id.* at 2153, "class of one" claims are inappropriate. Thus, *Engquist* requires a "class of one" plaintiff to "demonstrate that the differential treatment it received resulted from non-discretionary state action." *Analytical Diagnostic Labs, Inc. v. Kusel*, No. 07-CV-3908, 2008 WL 4222042, at *3 (E.D.N.Y. Sept. 15, 2008).

Here the LOA gave the Authority leeway to make "subjective, individualized determinations," *Engquist*, 128 S. Ct. at 2153, and to cancel an LOA whenever, in its view, that

---

[4] The LOA also provides that, "[i]n the event of a customer/Thruway Authority generated complaint, the findings of the Authority investigation are final and your firm agrees to accept and comply with the results," (Garrison Aff. Ex. C at ¶ B.6), and that the Thruway may, "in its sole judgment . . . issue a renewed [LOA] or notify your firm that this Authorization will be discontinued." (Garrison Aff. Ex. C at ¶ A.11.)

-12-

course seemed wise.[5] *Engquist* held "class of one" claims inapplicable "in contexts characterized by individualized and subjective determinations where 'allowing a challenge based on the arbitrary singling out of a particular [entity] would undermine the very discretion that . . . state officials are entrusted to exercise.'" *Siao-Pao v. Connolly*, 564 F. Supp. 2d 232, 245 (S.D.N.Y. 2008) (quoting *Engquist*, 128 S. Ct. at 2146). This is such a case. No arm's-length regulation or other set of standards exists against which the propriety of the Authority's termination decisions can be "readily assessed," *Engquist*, 128 S. Ct. at 2153, and the Authority's discretion is broad and subjective, *see Analytical Diagnostic*, 2008 WL 4222042, at *4-5 (*Engquist* bars equal protection challenge to licensing decision of state health department because decision is discretionary and based on subjective evaluation of factors, notwithstanding existence of statutory criteria and regulations listing factors to be evaluated). Accordingly, I find that *Engquist* applies to bar Plaintiffs' "class of one" equal protection claim here, providing an

---

[5] The discretion provided is not quite as boundless as employment at will, which permits the employer to act for "a good reason, bad reason, or no reason at all," *Engquist*, 128 S. Ct. at 2155 (internal quotation marks and citations omitted), but it is certainly very broad, and unconstrained by any regulations or written standards. Indeed, because of this "significant discretion over the individual's continued participation in [the] government program," there is no property interest in an Authority towing license for purposes of the due process clause. *Loyal Tire & Auto Ctr. Inc. v. N.Y. State Thruway Auth.*, 652 N.Y.S.2d 804, 807 (App. Div. 1997). Defendants argue in connection with the First Amendment point that, on the one hand, its evaluations of towing companies are only partly subjective, in that objective information such as the number of complaints and refunds is calculated, and on the other hand, that subjectivity in evaluating licensees is proper. (Defs.' Resp. at 10-11.) Defendants' denial of complete subjectivity (in contrast, ironically, to Plaintiffs' claim that the Authority has "almost total discretion" (Pls.' Objs. at 60)) does not affect my conclusion that *Engquist* should not apply here. Even if the Authority chooses to include some objective factors in its individualized evaluation of a garage, the fact remains that the ultimate decision is subjective, committed to the Authority's broad discretion, and unconstrained by statutory or regulatory criteria. *See Analytical Diagnostic*, 2008 WL 4222042, at *4-5 (statutory criteria and regulations listing factors for laboratory licenses did not render licensing decision a non-discretionary one as to which "class of one" liability might lie).

alternative ground for dismissal even if Plaintiffs had produced sufficient facts to withstand summary judgment on such a claim.

## Conclusion

For the reasons stated herein, Defendants' Motion for Summary Judgment is GRANTED. Their Motion to Strike is denied as moot. The Clerk of Court is respectfully directed to terminate the pending motions (Docs. 52, 98), and to close the case.

SO ORDERED.
Dated: October 7, 2008
      White Plains, New York

*Cathy Seibel*
CATHY SEIBEL, U.S.D.J.